**JOHNSTON et al. v. JONES.**

No. 9952.

United States Court of Appeals Third Circuit.

Argued Oct. 14, 1949.

Decided Dec. 21, 1949.

Rehearing Denied Jan. 19, 1950.

David Berger, Philadelphia, Pa. (Arthur W. A. Cowan, Philadelphia, Pa., on the brief), for appellants.

Samuel Kohn, Philadelphia, Pa., for appellee.

Before McLAUGHLIN and KALODNER, Circuit Judges, and JAMES ALGER FEE, District Judge.

KALODNER, Circuit Judge.

The plaintiffs, members of the American Guild of Variety Artists ("AGVA"), brought this action to recover damages for harm alleged to have been caused by the defendant, an officer of Philadelphia Local No. 6 of AGVA, in that he breached various duties owed to them in his official capacity. In the court below, judgment was given for the defendant when the plaintiffs at the non-jury trial, failed to adduce adequate proof in support of their complaint, and their motions (1) to set aside the judgment, (2) for a new trial, and (3) for summary judgment, were denied.

First, the plaintiffs contend that they are entitled to judgment on the issue of liability alone. On this score, it is argued that the defendant's answer does not meet the requirements of Rule 8(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; therefore, the court below erred in refusing to treat as admitted those allegations of the complaint which they deem not to have been denied in accordance with the Rule. Second, they assert that they were improperly refused a continuance of the trial in view of their counsel's absence from town and his consequent lack of preparation, and because of their unsuccessful attempts to serve a subpoena upon the defendant.

It appears that the plaintiffs were employed as performers by one Robert Vernon to participate in a production called "Earl

'Carroll Vanities". The show originated in California and toured the country, ending its run in Philadelphia, where it played from January 17 to January 23, 1947. Vernon had posted a bond in the amount of $3,000, ostensibly with AGVA, to assure the payment of salaries and transportation, and the theatre at which the production was exhibited had retained $2,500 of the amount owing to Vernon for its own assurance. Paragraph eight of the complaint enumerates the duties which the defendant is alleged to have owed to the plaintiffs under circumstances where Vernon, as it turned out, could not pay all the plaintiffs' salaries and transportation to California. Paragraph nine is the critical paragraph of the complaint, charging that the defendant violated the alleged duties, misapplied funds, and conspired with Vernon to remove his equipment from Philadelphia.

Although the answer is not exemplary, we agree with the learned District Judge that it sufficiently put in issue the specific charges of misconduct lodged against the defendant, in that it denies the violation of his official duties and asserts proper conduct under the particular circumstances. This, of course, would justify the denial of the motion for summary judgment as well as that for judgment on the issue of liability. See Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580. Mere reference to the essential allegations of Paragraph nine, and the answer thereto, support the conclusion we have reached.[1] The answer is, perhaps, confusing, because it contains general and specific denials, and at the same time asserts additional facts by way of justification or explanation, but the plaintiffs are not entitled to such a strict interpretation as would carry the courts back to the ancient niceties of pleading.

With respect to the plaintiffs' second point, the denial of their motions for continuance, the record reveals that on April 8, 1948, approximately six days after answer was filed, the plaintiffs directed the instant case to be placed on the non-jury trial list in the court below. On January 28, 1949, a motion for continuance was made on the plaintiffs' behalf, apparently on the ground that counsel was out of town. The motion, being opposed, was denied, and the trial scheduled for January 31, 1949. However, the trial did not commence until February 1, 1949, when the plaintiffs presented one witness whose testimony went to the merits and two witnesses who testified that on the previous evening they had unsuccessfully attempted

---

1. The answer denies in like language, the opening allegation that the defendant wilfully failed in his duties and maliciously conspired with Vernon; so also with respect to Paragraph 9(a) which alleges that the defendant induced the plaintiffs to accept worthless promissory notes from Vernon in compromise and settlement of their claims. Paragraph 9(b) alleges that the defendant misused the $3,000 entrusted to him (1) by paying for de luxe transportation of non-AGVA members and (2) by purchasing a sixth first class ticket in order to obtain a free baggage car for Vernon as part of a scheme to aid Vernon in spiriting his props away from Philadelphia at an early morning hour. In reply, the defendant specifically denies that he had misused the $3,000 entrusted to him; denied the allegation that he in any way violated his duties; denied that he applied part of the fund to purchase a sixth first class ticket; denied that he obtained for Vernon a free baggage car; and denied that he aided Vernon in spirit-

ing a baggage car out of Philadelphia. Paragraph 9(c) alleges a balance of the cash bond amounting to $463.04, which the defendant denied in like language. Paragraph 9(d) alleges that the defendant, grossly negligent and indifferent to his duties, took no steps to retain, and gave no notice of AGVA-members' claims against the $2,500 deposited with the theatre for Vernon's account. The answer thereto specifically denies that the defendant was grossly negligent and indifferent to his duties. Moreover, the complaint, in Paragraph 8(e) alleges that it was the defendant's duty to give the theatre notice of the performers' claims and to attach, if necessary, the $2,500. In answer to this, the defendant states that such notice was given, and the $2,500 was received by another officer of the Philadelphia Local. Finally, Paragraph 9(e) alleges that the defendant refused transportation to two of the plaintiffs, and the defendant denies the allegation in similar language.

to serve a subpoena upon the defendant requiring his attendance as a witness. Plaintiffs again sought a continuance until the defendant could be served, but this, too, being opposed, it was denied.

■ The plaintiffs here concede the settled rule, that a motion to continue is addressed to the sound discretion of the District Judge, and, on review, the single question is whether the action taken amounts to an abuse of that discretion. Applying this rule, we are of the opinion that the record herein does not justify the assertion that the trial judge committed reversible error.

In the court below, a Preliminary Call of all cases on the consolidated list is made at least twenty days before the trial period, and applications for continuance affecting the list must be made at that time. The Call list is seasonably sent to the attorneys involved, and the list carries a notice, not only of the above rules, but also of the rule that "No case which, after having been called at the Preliminary Call, has been listed for trial will be continued except for legal cause arising after the Call." The plaintiffs do not here assert that the case was omitted from the Preliminary Call, or that notice thereof was not received by their counsel or his office. No explanation is offered for the failure to request a continuance at the Preliminary Call.

Aside from this, it is stated in justification of the motion made on January 28, 1949, that counsel was in another city on business when he first got notice of the listing of the case for trial through his office.[2] It thus appears that counsel, on being informed by his office of the listing

of the case relied on his absence as a ground for delaying the trial instead of immediately returning therefor. We cannot say that, under the circumstances presented, the court below exceeded its discretionary powers in refusing the continuance at that time.

■ Nevertheless, the plaintiffs insist that a continuance should have been granted in view of the failure of service of a subpoena requiring the defendant to appear as a witness. Reliance is placed on Royster v. Lederle, 6 Cir., 1942, 128 F.2d 197, 200. But the Court there said: "A party to an action should not be compelled to go to trial in his absence or in the absence of the *only witness* by whose testimony he can make out his defense, unless it appears that he has been guilty of negligence in failing to attend the trial or procuring the attendance of the witness on whom he relies or in obtaining his testimony by deposition or otherwise." (Emphasis supplied).

Again, we cannot say that the learned trial judge abused his discretion insofar as there existed a question of the exercise of diligence on the part of the plaintiffs in serving the subpoena upon the defendant. For, despite the denial of a continuance on January 28, 1949, the record discloses that no subpoena issued and no attempt was made to serve a subpoena upon the defendant until the evening of January 31, 1949, when the trial was scheduled, and after a delay of one day had been granted by the Court. In any event, although the plaintiffs professed a desire to prove the substance of their case through the defendant's testimony,[3] it is nowhere contended that he was the only witness they could utilize for that purpose.[4] On the contrary, the claim that the defendant had failed to attach the $2,-

2. Plaintiffs' brief, page 21. Attention is drawn to a further statement on the same page of this brief to the effect that the plans for counsel's business trip had been made and executed long before the case was set down for trial; accordingly, it is not understood that the situation discussed was the product of emergency or unavoidable accident. It does not appear that the aforementioned "plans" took into consideration any necessity for timely notice to the Court or to the defendant.

3. As already stated, the plaintiffs produced one witness whose testimony was directed to the merits. The attempt to establish, through him, that the baggage car left Philadelphia at an early morning hour did not succeed, since the witness stated that the car left at about 8 A. M., not an unusual time.

4. Cf. Darrow v. United States, 9 Cir., 1932, 61 F.2d 124; Harrah v. Morgenthau, 1937, 67 App.D.C. 119, 89 F.2d 863.

500 owed to Vernon and reserved by the local theatre may well have been established through the theatre's management; the claim that the defendant had refused to pay the transportation to California of two of the plaintiffs may well have been established through the testimony, or by the deposition, of the plaintiffs; so, too, with the assertions that the defendant induced the plaintiffs to compromise their claims against Vernon and to accept worthless promissory notes. These, of course, are not recited as exhaustive of the plaintiffs' resources, but indicate that diligence might have averted the difficulties in which the plaintiffs found themselves. Moreover, the fact that one local witness was produced emphasizes the absence, in the record, of any showing of diligence to procure other local witnesses and to take the depositions of those witnesses, and plaintiffs, who resided at a distance from the place of trial.

We conclude, therefore, that the plaintiffs have not shown "such clear error as to amount to a plain abuse springing from an arbitrary exercise of power." Valdes v. Central Altagracia, Inc., 1912, 225 U.S. 58, 73, 32 S.Ct. 664, 670, 56 L.Ed. 980.

Accordingly, for the reasons stated, the judgment of the District Court will be affirmed.